**COMMISSIONER OF INTERNAL REVENUE v. BURDICK.**

**No. 4699.**

Circuit Court of Appeals, Third Circuit.

May 13, 1932.

McVICAR, District Judge, dissenting.

Hayner N. Larson, of Washington, D. C., for appellant.

Wm. Wallace Booth, and W. A. Seifert, both of Pittsburgh, Pa. (Smith, Shaw, McClay & Seifert, of Pittsburgh, Pa., of counsel), for appellee.

Before DAVIS, Circuit Judge, and DICKINSON and McVICAR, District Judges.

DICKINSON, District Judge.

The very full discussion of the legal merits of this cause returned with the order of the Board in redetermining the tax due by the respondent's decedent has made further extended discussion unnecessary except as the argument addressed to us by the experienced counsel for the Commissioner calls for consideration. Respondent's decedent was heavily interested in a corporation which for brevity we will call the Marf Company. He was was the owner of all the preferred stock of the company consisting of 600 shares of the nominal par value of $100 each. For this stock he had paid $60,000. The company had a further total issue of 1,900 shares of common stock of a like nominal value or $190,000 in all. Of this the decedent held 950 shares. What he paid for these shares does not appear, otherwise than by the finding that the loss on 441 of them is measured by $41.66 per share. He seems to have first acquired 600 shares and subsequently 350 more. He sold these 350 shares, but no loss is claimed because of this, for the reason that, he being deceased, what they cost him was unknown. The decedent had another side interest in the company because he was a creditor in the sum of $25,000 and his father in the sum of $36,328.60 and another stockholder in the sum of $2,000. For these latter sums the

decedent felt a moral responsibility or at least wished to have them paid in full. The company fell into financial difficulties so that the need of fresh capital and of new management was felt. A man by the name of Louis C. Kunz was willing to step into the breach upon terms satisfactory to him and the decedent. These terms included the furnishing by Kunz of $40,000. The services of the Guaranty Trust Company were called in to act as trustee for all parties pending the carrying out of the arrangement made. The terms of the agreement were embodied in a joint letter to the trust company dated November 28, 1922. For a full understanding of the transaction it may be interpolated that Arvid Jansson held 475 and Frank Cohen 475 of the shares of common stock, they with the decedent being thus the owners of the whole 1,900 shares of the common stock issue.

The terms of the agreement, in substance, were as follows: Certificates of stock, obligations of the company, and money were to be deposited in escrow with the trust company; by the decedent 950 shares of common stock, 600 shares of preferred, and the note of the company for $25,000, which he held; by Jansson 475 shares of common stock; by Cohen 475 shares, and by Kunz $40,000. Out of the $40,000 the trust company was to purchase the $36,328.60 note of the company held by the father of the decedent and the $2,000 note held by Jansson and pay the balance of the $40,000 to the decedent on account of interest due him on the $25,000 of notes of the company which he held. The $25,000 of notes held by the decedent were to be surrendered to the company upon receipt in exchange of a series of new notes maturing at different dates. The 1,900 shares of common stock were to be apportioned 1,425 to Kunz and the remainder divided equally among the other parties to the transaction, the decedent to receive 159 shares as his portion. The purchased notes held by the father of the decedent and by Jansson were to be stamped "paid" and delivered to the company. There was a further stipulation that the parties were "to use their best efforts" to have the company "reduce" its capital by the withdrawal of its preferred stock and the "cancellation" of the 600 shares issued. The agreement above outlined was carried out in all its features; the preferred stock being assigned to Kunz and "withdrawn" and certificates for the 159 shares of common stock which the decedent was to retain were duly issued to him. These he sold in 1927 for $7,-

950. In 1923 he made an income tax return in which he claimed a loss on the above transaction of $78,376.06 made up as follows:

| | |
|---|---|
| 600 shares of preferred stock at $100.00 | $60,000.00 |
| 600 shares (less 159) of common stock at $41.66 | 18,376.06 |
| Total | $78,376.06 |

The Commissioner disallowed any deduction from taxable income holding there was no loss arising out of the recited transaction treating it "as a reorganization under the provisions of section 202 (c) (2) of the Revenue Act of 1921 [42 Stat. 229] and determined a tax deficiency in the amount of $11,110.20." The decedent was duly notified of such finding of deficiency, and demand was made for the payment of the tax thus unpaid. The decedent thereupon applied to the Board of Tax Appeals asking it to find that the petitioner had "suffered a loss on the above transaction and that said loss is an allowable deduction from his gross income for the year 1923." The Board with an accompanying opinion filed September 10, 1930, determined the question raised in favor of the taxpayer except that it held that the deduction of $78,376.06 claimed should be reduced by the sum of $5,021.05, representing the gain which accrued to the taxpayer on his 159 shares of common stock through the withdrawal of the 600 shares of preferred stock, thus making a found loss and proper deduction of $73,355.01. The final order of the Board was filed October 25, 1930. These latter dates are of no present importance, but there would seem to be what is doubtless a typographical error in the printed record which we have ventured to correct. The Commissioner has filed in this court his "petition for review from the Board of Tax Appeals" with five assignments of error to the decision of the Board. An analysis of the subject of discussion discloses two questions, one of fact and one of the application of the act of 1921. The fact question is whether the taxpayer had suffered a loss. If he did, there is no difference over its extent expressed in terms of money. We have gone into the details of the 1922 transaction because of their possible bearing upon the question of the application of the Revenue Act of 1921. They have no bearing upon the first question of loss. Stripped of these details, the taxpayer who owned 600 shares of the preferred stock of the company and 950 shares of the common stock sold all his holdings except 159 shares

of common stock to Kunz. This simple statement makes it clear that he did lose the difference in the value of his holdings before and after. Just what his actual loss through this sale transaction, figured in terms of money, was, may be differently stated. It may well be that he lost nothing through the transaction of 1922, for his stockholdings before may have been worth nothing and the 159 shares he retained became worth something, for they might have been figured at the time as having a value of a little over $28 per share, and the Board found their value had been enhanced $31.58 per share and some years thereafter they were sold for $50 per share. His taxable income loss figured on the basis of what his stockholdings had cost him was, however, as follows:

| | |
|---|---|
| 600 shares preferred stock (assumed cost $100) | $60,000.00 |
| 791 shares common stock (assumed cost $41.66) | 32,953.06 |
| Total | $92,953.06 |
| Less enhanced value of 159 shares common as found by the Board | 5,021.05 |
| Net Loss | $87,932.01 |

In the deduction claim made 350 shares were dropped out because it was not known what the cost was, thus reducing the claim made by $14,581 or to $78,372.06. The truth of this statement would not seem to admit of doubt, nor does the truth of what was found by the Board that in theory the 159 shares of common stock retained had been enhanced by the withdrawal of the preferred stock.

Why then should a deduction not be allowed from total income? The only answer made is that the Revenue Act of 1921, § 202 (c) (2), forbids it. This act provides that for taxable purposes no "loss shall be recognized ⁺ ᵗ when in the reorganization ᵇ ⁺ ⁺ [of a corporation] a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to or resulting from such reorganization." The whole argument is summed up in the comment that this act has to do with the not uncommon case of the reorganization or merger of corporations in which a part of

the plan is that those who held "the stock or securities" of the old corporation should receive "in place of" what they had before held "stock or securities" of the reorganized or new corporation. This taxpayer received no "stock or securities in place of any stock or securities" before owned. When the transaction was completed, he retained 159 shares of the common stock which he had before owned. He received nothing from the corporation. All he had done was to part with a part and a large part of what he had formerly owned. Moreover, the transaction out of which his loss arose was a transaction to which the corporation was not a party. It was nothing more than what on its face it purports to be, a transaction in which Kunz "agrees to purchase" and the taxpayer "agrees to sell, transfer and assign" what was really 600 shares of the preferred and 791 shares of the common stock of the company. The taxpayer did "sell, transfer and assign" this stock as he had agreed to do. The real and only consideration he received was the expectation that under the management of Kunz the retained stock of the taxpayer would have an enhanced value.

The question of loss on the 350 shares of common stock and the propriety of the $5,021.05 deduction made by the Board from the taxpayer's claimed loss are not before us. The sole question is whether the cited provision of the act of 1921 has application. Whether it has depends upon whether the transaction of 1922 was a "reorganization" of the company within the meaning of the taxing statutes. Precedents are of little value upon such questions because no two situations are alike. We see little to be gained by following the very full argument submitted on behalf of the Commissioner, and content ourselves with a statement of the findings already indicated that the taxpayer sustained a loss through the transaction of 1922, which should be deducted from his taxable income as found by the Board of Tax Appeals and that the Revenue Act of 1921, § 202 (c) (2), does not forbid the deduction.

The assignments of error are all overruled.

McVICAR, District Judge, dissents.