**PEABODY COAL CO. v. UNITED STATES.**

No. 42024.

Court of Claims.

Nov. 5, 1934.

Hopkins, Sutter, Halls & De Wolfe, of Chicago, Ill., for plaintiff.

James A. Cosgrove, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (Elizabeth B. Davis, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The question involved in this case is whether a stockholder in a corporation who finds it necessary to surrender a part of his stock to bankers without receiving in return therefor at the time any tangible or definite consideration of determinative value, in order to induce such bankers to refinance the corporation or furnish the required capital for its continued operation, is entitled to a deduction of the amount of the cost of the stock so surrendered under section 234 (a) (4) of the Revenue Act of 1926, 26 USCA § 986 (a) (4), which provides that in computing net income there shall be allowed as deductions all losses sustained during the taxable year.

We are of opinion under the facts in this case that the claimed deduction of $60,288.22, representing the actual cost to plaintiff of the 18,000 shares surrendered, was a loss sustained and an allowable deduction within the meaning of the statute, and that plaintiff is entitled to recover the overpayment made on the basis of the determination of the Commissioner of Internal Revenue in connection with which he refused to allow any deduction.

The question is not new. The principle for which plaintiff contends has been announced and followed by the United States Board of Tax Appeals in Wright v. Commissioner, 18 B. T. A. 471; Burdick, Executrix, v. Commissioner, 20 B. T. A. 742; City Builders Finance Co. v. Commissioner, 21 B. T. A. 800, and Clement et al. v. Commissioner, 30 B. T. A. 757. In the last-decided case the Board approved the rule announced in its previous decisions but denied the deduction claimed in that case on the ground that the amount of loss sustained through the surrender of the stock was not established at one cent a share as claimed. In the Wright Case the taxpayer surrendered 51 per cent. of his stock to bankers as one of the inducements to bankers to refinance the corporation. Such stock was turned over by the bankers to a new manager of the company, selected by them, as compensation for his services in further conducting the business; the purpose of the bankers being known to the stockholders at the time they surrendered their stock. The Board said: "The only question to be determined in this proceeding is whether there was a closed transaction in 1922 with respect to 131 shares of stock in the American Hominy Co. which petitioner surrendered in that year to the bankers of the company, and which in turn the bankers paid over to a new company manager of their selection. If the stock had been merely surrendered to the company so that the proportionate representation of stockholders remained the same, a different question would be presented (see Edith Scoville, 18 B. T. A. 261), but it is clear from the stipulated facts that such was not the case, the stock being released to the bankers and by them turned over to the new manager, who became the majority stockholder, and the petitioner definitely parted with 131 shares of stock which cost him $13,100, and which had a value of that amount on March 1, 1913. We are of opinion petitioner is entitled to the loss claimed."

The Board's decision was appealed to the Circuit Court of Appeals for the Seventh Circuit and that court held, Com'r of Internal Revenue v. Wright, 47 F.(2d) 871, that the taxpayer was entitled to the deduction claimed but only in an amount equal to the cost of the stock surrendered at its fair market value at the date of surrender.

We find ourselves unable to concur in the basis of measuring the loss sustained as thus announced by the court. Had the stock in question been sold and money or other property of a determinative value been received therefor, the difference between the cost and such consideration would, of course, have been the taxpayer's deductible loss. But Wright, as the plaintiff in the case at bar, received at the time nothing whatever for the stock surrendered and should not, therefore, we think, be charged with whatever market value the stock may have had which he did not, at the time, receive. That market value belonged to the persons who received the stock. The liability of the corporation to its stockholders remained the same after the surrender of the stock by plaintiff as before. There was no direct benefit to the balance of the stock which plaintiff continued to own through any reduction in the outstanding capital stock of the corporation. Any increase in the market value of the stock of the corporation, including that surrendered by plaintiff, several years after the transaction, if the affairs of the corporation were subsequently successful, cannot affect the question here. Fluctuation in the value of the stock

does not give rise to gain or loss. We think that any contemplated advantage to the corporation, and indirectly to the stockholder who surrenders a portion of his stock not to the corporation but to outsiders, through new services or loans, to the corporation, is so speculative as not to form a proper basis for a reduction of the loss sustained unless other circumstances not present here enter into the case. We can understand how there might come to the stockholder, under certain circumstances, a definite and determinable consideration through the arrangements under which stock is surrendered, such as was present in the case of Burdick, Ex'x, v. Commissioner, supra, but in the circumstances of the present case any contemplated advantage to the corporation, and indirectly to plaintiff, was so remote, intangible, and speculative as not to be susceptible of proof and measurement in the terms of dollars and cents. This was obviously the basis on which the Board reached its conclusions in the cases cited.

In the case at bar, the Consumers' Company, a portion of whose stock was surrendered by plaintiff, agreed to pay, and became obligated to pay, to the bankers who advanced $8,500,000, the amount of $850,000 for the loan made. From the standpoint of the amount of the outstanding indebtedness of the corporation its condition upon the loan was not materially changed but under the arrangement it was enabled to postpone the date on which it was required to meet its obligations.

The case of Burdick, Ex'x, v. Commissioner, supra, was appealed to the Circuit Court of Appeals for the Third Circuit and, by that court, affirmed. In that case the principle involved in the Wright Case, and here contended for by plaintiff, was applied but the loss allowed was measured by the total cost of the stock surrendered reduced by the definite and determined increase in value attaching to the remainder of the stock held by the stockholder through the surrender by him to the corporation for cancellation of a certain number of shares of outstanding preferred stock. With that result we entirely agree, but the same situation is not present here.

For the reasons stated and under the facts of this case, we think the proper measure of loss involved is the cost of the stock surrendered and judgment in favor of plaintiff for the overpayment of $8,922.90 resulting therefrom, with interest, will be entered. It is so ordered.