## MACK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 242.

Circuit Court of Appeals, Second Circuit.

July 7, 1942.

Jones, Clark & Higson, of New York City (Francis D. Higson, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Robert R. Barrett, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The deficiency in dispute resulted from the disallowance by the commissioner of a deduction of $41,600 claimed in the taxpayer's 1937 return as an ordinary loss, deductible under section 23 (e) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Code § 23 (e) (1), in respect to 416 shares of preferred stock of William B. Nichols & Co. This corporation was engaged in the business of industrial management and engineering. Its income was derived principally from fees for such services. It was still in business at the time of the hearing before the Board. In the latter part of 1937 it had outstanding 2,547 shares of preferred and 1,000 shares of common stock. The taxpayer owned 416 shares of the preferred which he had acquired at various times at a cost of $100 per share. He was a director of the corporation, and in earlier years had served as the treasurer and a vice-president. During 1936 the corporation had paid dividends of nearly 9 per cent. on the taxpayer's preferred shares, but during 1937 it sustained losses, its cash position was low, a substantial part of its assets were "frozen," and a number of its receivables were uncertain. Under date of November 16, 1937 the president, William B. Nichols, wrote to the taxpayer that these circumstances made it difficult to comply with his request for a calculation of "a fair liquidating value for the preferred stock." The letter enclosed an itemized balance sheet of the company as of November 1, 1937, with explanatory notes on particular items, and asked the taxpayer for "suggestions.". He replied at length in a letter dated November 30th, which is set out in full in the Board's opinion. It will suffice here to quote the following passages from his letter:

"I regret exceedingly that I cannot place any more capital in the company at this time, and, furthermore, my time is so taken up that it will be impossible for me to give much time to William B. Nichols & Co., Inc.

I feel very strongly my obligations as a director and as a friend. I know that my name has been associated with your company for quite a number of years, and I only wish there was something I could do to help the corporation at this time.

"After giving this matter considerable thought, I have come to the conclusion that the only thing I can do to help the situation is this. I am willing to surrender all of the preferred stock that I own of William B. Nichols & Co., Inc., to you, individually, with the hope that you may be able to use this preferred stock, either to secure additional capital or to obtain services from others who may be able to help you. Therefore, I enclose herewith 416 shares of the preferred stock of William B. Nichols & Co., Inc., properly endorsed. In view of the fact that this is the only investment that I have in the corporation, I feel that I should resign as director of the company, which action I take with considerable regret. However, I request that my resignation be accepted, to take effect as of this date.

"My good wishes will be always with you and I do hope that you will be able to work the situation out."

As therein stated, the petitioner's stock certificates, endorsed in blank, were turned over to William B. Nichols. This disposition, the petitioner contends, closed the transaction and resulted in a loss to him of the entire cost of his stock.

From the evidence, all of which was stipulated, the Board found (1) that at the time of the transfer the petitioner's stock had not only a substantial liquidating value but probably a much higher potential value, and (2) that the "petitioner intended to and did make a gift of his preferred stock to Nichols." Consequently the Board held that the taxpayer was not entitled to deduct any part of the cost of the stock as a loss resulting from such transfer.

Although the precise value of the taxpayer's 416 shares of preferred stock was not shown, the finding that they had considerable value when transferred to Nichols cannot be successfully disputed. The book value was approximately $48 per share; doubtless this would have to be materially scaled down. But regardless of book value, it appears that in the month of December 1937 the corporation purchased from anoth-

er shareholder 50 acres of preferred stock at $5 per share and a year later paid the same price per share for 300 shares. This evidence alone shows that the taxpayer's shares were worth at least $2,000—a substantial sum. The Board rightly held that the petitioner's disposition cannot be viewed as an abandonment of a worthless asset. Cf. Commissioner v. Hoffman, 2 Cir., 117 F.2d 987; Commissioner v. Abramson, 2 Cir., 124 F.2d 416.

If the finding stands that the transfer was a gift to Nichols, the petitioner cannot prevail. See Evans v. Rothensies, 3 Cir., 114 F.2d 958, 962; Treas. Reg. 94, Art. 23 (e)-1. Indeed, this is conceded. He asks us to reverse that finding. But it is too well established to require the citation of authority, that findings of fact by the Board are conclusive, unless unsupported by substantial evidence. The inference of gift which the Board drew from the voluntary transfer and the correspondence between the parties is entirely reasonable; we cannot say there was error in so finding. It is urged that the Board's opinion fails to note that the corporation's tax return for the year 1937 lists in schedule C "Donation of stock $20,800." This shows, the brief says, that the 416 shares transferred to Nichols were turned in by him to the corporation, and it is explained (although the record is silent on the subject) that the amount of $20,800 represents the $41,600 issue price received from the taxpayer, because the par value of the shares had been reduced from $100 to $50 per share. Assuming that the facts of record may be thus supplemented, the additional facts appear to us immaterial. The gift to Nichols imposed no obligation upon him to donate the stock to the corporation. It was transferred to him "individually," and he was free to do with it as he pleased. What the donee does with a gift cannot affect the donor's tax liability. As the finding that the taxpayer's shares were a gift to Nichols must stand, it is unnecessary to consider cases cited by the petitioner involving relinquishment by a stockholder of part of his shares for the purpose of procuring benefits for the corporation from third parties. See Commissioner v. Wright, 7 Cir., 47 F.2d 871; Commissioner v. Burdick, 3 Cir., 59 F.2d 395 (C.C.A. 3); Peabody Coal Co. v. United States, Ct.Cl., 8 F. Supp. 845.

Order affirmed.