**FEINE v. McGOWAN, Collector of Internal Revenue.**

No. 12, Docket 21651.

United States Court of Appeals Second Circuit.

Argued March 7, 1951.

Decided April 23, 1951.

Daniel G. Yorkey, of Buffalo, N. Y. (Edward G. Kinkel, Albert R. Mugel, and Bertil L. Peterson, all of Buffalo, N. Y., on the brief), for plaintiff-appellant.

Melva M. Graney, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., on the brief), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff George R. Feine sued the Collector of Internal Revenue for partial

refund of his federal income tax paid for the year 1934, basing his claim upon the right to take a capital loss on the disposition of certain shares of corporate stock owned by him. The District Court refused the deduction, concluding that plaintiff's disposition of his stock was by way of gift or at least was not a transaction entered into for profit. We think its conclusion must be sustained. As will be seen, the evidence, even though for the most part stipulated, was unsatisfactory in the things it left unexplained. Plaintiff apparently had in his grasp a substantial capital loss, available by selling the stock for the nominal price available; yet for some unexplained reason he took the involved course we shall presently consider. He did not take the stand himself, but left the oral testimony to his lawyer, Kinkel. The trial court correctly held the burden on him to sustain the asserted loss, and his must be the consequence of the lack of evidence shown.

From the facts it appears that in the years 1927–1930 plaintiff bought shares of stock of March Gold, Inc., a Delaware company, which owned 93 per cent of the outstanding stock of March Gold, Ltd., a Canadian company operating a gold mine. (These are the same companies which appear in the companion case herewith, Kinkel v. McGowan, 2 Cir., 188 F.2d 734; and as will be seen, some of the history there recited is also apposite here.) In 1931, Limited issued some bonds which were later pledged to the Royal Bank of Canada as collateral security for a debt owed the Bank by Limited. Then in 1932 Limited encountered financial difficulties and suspended all mining and milling operations. And on May 20, 1933, the Bank foreclosed because Limited had defaulted on both the bonds and the sinking fund. Funds to pay the Bank's claim and others held by other creditors were then subscribed by Limited's bondholders, its stockholders, and various third parties. For cash put up by this taxpayer he was given the right to subscribe to shares of Marbuan Gold Mines, Ltd., a new corporation which ultimately took title to the foreclosed property and in which plaintiff also became interested through other transactions. Thereafter in 1934 he took steps to transfer his March Gold, Inc. stock to Marbuan and to enter into an agreement waiving his rights to subscribe to the Marbuan stock. The nature of this transaction—or these transactions—forms the crux of the case. Plaintiff asserts that the transfer of the stock was a sale, but the District Court has found against him.

In taking the steps he did, plaintiff executed at least two pertinent documents which were in evidence below. One is a proxy agreement dated April 10, 1934, in which plaintiff "does hereby irrevocably constitute and appoint and empower the board of directors of Marbuan Gold Mines, Ltd., as such, and its agent and its several successors, his (her) true and lawful attorney and proxy, in his (her) name and stead for a period of five (5) years" to vote and act as his agent at all meetings and otherwise to "do and perform any and all acts which a stockholder of March Gold, Inc., may do or perform," save only for the following reservation: "The Undersigned has delivered, or will deliver, to the Marbuan Gold Mines, Ltd., his (her) certificate or certificates of shares of stock of March Gold, Inc., for the purpose of establishing his (her) ownership in such shares of stock to entitle him (her) to receive such share purchase warrant, or otherwise, *but does not sell, assign, transfer or part with his (her) title of said shares of stock of March Gold, Inc., to the said Marbuan Gold Mines, Ltd., or to anyone else.*" (Emphasis added.) The other, which is dated only "1934," is a formal assignment by plaintiff to Marbuan of the same shares involved in the proxy agreement. The evidence was conflicting as to its actual date. In a pretrial written admission verified by plaintiff, Kinkel, his counsel, stated that the stock "was transferred and assigned to Marbuan Gold Mines Ltd. on or about April 10, 1934," while at the trial Kinkel testified: "Yes, it was in 1934, and I think—I will have to say it is on recollection, because I can't swear positively but late in the year 1934." This document recited the receipt of $151.36 in consideration for the assignment of all rights in the 15,136 shares so transferred; but Kinkel testified on cross-examination that Feine "actually never re-

ceived that one cent a share from Marbuan in cash," and the trial court so found. The court also found that the assignment was actually made on April 10, 1934.

Upon a record consisting therefore of these documents, together with rather voluminous stipulations of fact, largely concerning the intercorporate history, and the meager testimony at the trial, the District Court found that plaintiff's evidence was "insufficient in law" to meet the requirements of the statute, Revenue Act of 1934, § 23, 26 U.S.C.A.Int.Rev.Acts, page 671. This provides: "In computing net income there shall be allowed as deductions: * * * In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise * * * (2) if incurred in any transaction entered into for profit, though not connected with the trade or business."[1] The trial court apparently had in mind two theories; that there was insufficient evidence to support a finding that a sale had been made in 1934, and that taxpayer had actually made in legal effect a gift of his shares to Marbuan, because the transaction was not one for profit throughout, and, as the opinion below states, "It was not an ordinary business transaction."

■■ To sustain his position here, the taxpayer must show that he "sustained" a loss in a transaction "entered into for profit." The Supreme Court has said that deductibility of losses under this section depends upon "whether the taxpayer's motive in entering into the transaction was primarily profit." Helvering v. National Grocery Co., 304 U.S. 282, 289, n. 5, 58 S.Ct. 932, 936, 82 L.Ed. 1346. So profit means pecuniary gain. Goldsborough v. Burnet, 4 Cir., 46 F.2d 432, 433. And just as a transaction not "entered into" for profit may become one because of changed circumstances, Heiner v. Tindle, 276 U.S. 582, 48 S.Ct. 326, 72 L.Ed. 714, so one begun on that basis may in law become one conducted or

concluded on some other basis. Evans v. Rothensies, 3 Cir., 114 F.2d 958, 962. Ordinarily the transaction must be for profit throughout; and certainly where, as here, plaintiff's claim is bottomed on the allegation that there was a sale, "it is essential to a transaction entered into for profit that the highest and best price be obtained for property sold." We are satisfied that the District Court was correct in concluding that the taxpayer did not meet the burden of proving his case.

■ While the transaction may not appear to resemble the ordinary gift of shares of stock to a favored donee, yet it was gratuitous and hence there is no basis upon which we can properly upset the trial court's holding that there was no sale. Proof of a sale is clearly necessary, for that is what plaintiff alleged and there is nothing to show that he "abandoned" these shares in 1934. Moreover, it is obvious that if the transfer was a gift, the loss is not deductible. Mack v. C. I. R., 2 Cir., 129 F.2d 598, 600.

In view of this conclusion we do not need to examine an alternative view which the court intimates. For there was evidence that the stock was not transferred on the books of the company until 1940 and was voted under the proxy agreement at a stockholders' meeting in 1939. These acts of delayed dominion appear to have suggested the absence of any completed disposition in 1934 and point further to the whimsicalities of the evidence. But we may rely upon the findings and conclusions first stated for our judgment of affirmance.

Judgment affirmed.

L. HAND, Circuit Judge concurring.

I prefer to rest my vote on the plaintiff's failure to prove that he transferred the shares in 1934. The judge found that the proxy and the transfer were executed at the same time; if so, since they directly contradicted each other, the plaintiff did not

By § 117(a), Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, page 707, capital losses are limited to a percentage of the total loss, depending upon the time the property has been held. U.S.Treas.Reg. 86, art. 23(e)–1, Revenue Act of 1934;

Kinkel v. McGowan, 2 Cir., 188 F.2d 734. Here the taxpayer was claiming only 30 per cent of the loss on his stock acquired in 1927–1928, and 60 per cent on that acquired in 1930.

carry the burden of proving a transfer in 1934. True, the judge did not expressly so find, but we are justified from his subsidiary finding in making the inference ourselves. For that reason I think that we may properly leave unanswered the question whether, if the transfer followed the proxy, the transaction was entered into for profit, as to which I am not so clear as I could wish.