Charles H. Duell and Ruth P. Duell v. Commissioner.
Duell v. Commissioner
Docket No. 78696.
United States Tax Court
T.C. Memo 1960-248; 1960 Tax Ct. Memo LEXIS 42; 19 T.C.M. (CCH) 1381; T.C.M. (RIA) 60248; November 23, 1960
*42 During the taxable years 1954, 1955, and 1956, petitioner Charles H. Duell, without consideration, unconditionally surrendered for cancellation 2,120 shares of preferred stock in a corporation in which he was the principal common stockholder. There was no ratable contribution of their stock by the other stockholders to the corporation. Petitioner's purpose in surrendering the preferred stock was to improve the corporation's financial condition. The increase in value of petitioner's remaining stock in the corporation resulting from his surrender of the preferred stock was stipulated as $24.15 in 1954, $1,242.69 in 1955, and no increase in 1956. Held, following Julius C. Miller, 45 B.T.A. 292, that petitioner is entitled to deduct as ordinary losses in the taxable years the difference between the stipulated basis of the stock surrendered and the stipulated increase in the value of petitioner's remaining stock. E. Randolph Dale, Esq., 122 East 42nd Street, New York, N. Y., Walter W. Walsh, Esq., and George Berlstein, Esq., for the petitioners. James E. Markham, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax for the taxable years ended December 31, 1954, 1955, and 1956 in the amounts of $2,909.62, $5,029.15, and $6,536.76, respectively. The issue is whether petitioner Charles H. Duell sustained deductible losses under section 165 of the Internal Revenue Code of 1954, during the *44 taxable years 1954, 1955, and 1956, by reason of the unconditional surrender for cancellation without consideration during those years of certain shares of preferred stock in a corporation in which petitioner was also the principal common stockholder. Findings of Fact Petitioners are husband and wife and reside in Riverside, Connecticut. They filed joint Federal income tax returns for the calendar years 1954, 1955, and 1956 with the district director of internal revenue at Hartford. Duell, Sloan & Pearce, Inc., herein sometimes referred to as the corporation, is a corporation organized and existing under the laws of the State of New York. During the years 1954, 1955, and 1956, Charles H. Duell, herein sometimes referred to as the petitioner, was president and a director of the corporation. The corporation was organized in October 1939 and since that time has been engaged in the book publishing business. For the years 1944, 1945, and 1947, the corporation operated profitably. Thereafter and through the fiscal year ended January 31, 1957, its operations resulted in losses, quite substantial in some years. To help alleviate some of the corporation's financial and operational *45 problems, the corporation entered into an agreement with Little, Brown & Company in 1951 under which Little, Brown & Company provided a sales organization, various publishing services and working capital in return for a share of the profits and a certain amount of editorial control. The contract with Little, Brown & Company remained in effect for about 4 years but proved unsatisfactory because it gave Little, Brown & Company too much editorial control and because the profit-sharing formula did not give the corporation a sufficient financial return. Early in 1954 petitioner consulted Andre Maximov, who had been attorney for the corporation since its formation for the purpose of exploring ways of improving the corporation's financial condition in order to avoid possible bankruptcy and to improve the corporation's chances of getting additional capital and perhaps entering into an agreement with another publishing house more favorable than the agreement with Little, Brown & Company. Maximov recommended a program which included reduction of the par value of the corporation's preferred and common stock, the cancellation of all preferred stock dividend arrearages, and the surrender *46 to the corporation for cancellation of as much as the corporation's preferred stock as possible. On January 31, 1953, petitioner owned 2,140 shares of the corporation's common stock out of 3,520 shares outstanding, and 510 shares of its preferred stock out of 3,024 shares outstanding. On January 31, 1953, the second largest stockholder in the corporation, C. A. Pearce, owned 750 shares of the corporation's common stock and 5 shares of its preferred stock. During the fiscal year ended January 31, 1954, Pearce purchased from other stockholders 340 shares of preferred. During the fiscal years ended January 31, 1955, and 1956, Pearce surrendered to the corporation for cancellation without consideration 173 and 172 shares, respectively, of the corporation's preferred stock. On January 31, 1956, he still owned the 750 shares of the corporation's common stock but did not own any of its preferred stock. During the fiscal year ended January 31, 1954, petitioner disposed of the one share of common stock of the corporation and purchased from other stockholders 620 shares of preferred stock. During the fiscal year ended January 31, 1955, petitioner acquired from other stockholders 400 shares *47 of the corporation's common stock and purchased from other stockholders 990 shares of its preferred stock. On December 21, 1954, petitioner surrendered to the corporation "unconditionally" and "without consideration" 730 shares of preferred stock of the corporation. On the same date he wrote a letter to the corporation, the material part of which letter is as follows: For the purpose of improving the financial condition of your company, and without consideration, I hereby unconditionally surrender to you * * * (730) shares of your preferred stock. Certificates Nos. * * * representing such stock are enclosed herewith duly endorsed and with appropriate transfer stamps attached. A similar procedure was followed by petitioner with reference to 755 shares of preferred stock which he surrendered to the corporation on January 26, 1955, and with reference to 635 shares of preferred stock which he surrendered to the corporation in 1956. On January 31, 1956, petitioner still owned 2,539 shares of the corporation's common stock but did not own any of its preferred stock. The cost to petitioner of the 730 shares surrendered on December 21, 1954, was $16,000 made up of 600 shares at a cost *48 of $5 per share, and 130 shares at a cost of $100 per share. The cost to petitioner of the 755 shares surrendered on January 26, 1955, was $19,625 made up of 550 shares at a cost of $1 per share, 190 shares at a cost of $100 per share, and 15 shares at a cost of $5 per share. The cost to petitioner of the 635 shares surrendered in 1956 was $19,940 made up of 440 shares at a cost of $1 per share, and 195 shares at a cost of $100 per share. The increase in value of petitioner's remaining stock in the corporation (both common and preferred) resulting from his contributions of preferred stock was $24.15 in 1954, $1,242.69 in 1955, and no increase in 1956. The number of common and preferred shares of the corporation owned by the stockholders thereof on January 31 of each of the following years, together with the percentage of ownership thereof, are as follows: Year Ended
Petitioner
C. A. Pearce
All Others
Jan. 31
Common
Preferred
Common
Preferred
Common
Preferred
1953
2,140
510
750
5
630
2.509
1953
60.8%
16.9%
21.3%
0.1%
17.9%
83.0%
1954
2,139
1,130
750
345
631
1,549
1954
60.8%
37.4%
21.3%
11.4%
17.9%
51.2%
1955
2,539
635
750
172
231
559
1955
72.1%
46.5%
21.3%
12.6%
6.6%
40.9%
1956
2,539
None
750
None
231
559
1956
72.1%
None
21.3%
None
6.6%
100%
*49 At the time the preferred stock was being surrendered, the corporation also arranged for the recapitalization of its corporate financial structure. The recapitalization steps included the reduction of the par value of the corporation's common stock from $10 to $1 a share; the reduction of the par value of preferred stock from $100 to $50 a share; the reduction of the price at which the preferred stock might be redeemed by the corporation, and the price at which the holders of the preferred stock would be entitled upon the liquidation, dissolution, or winding up of the corporation, from $100 to $50 a share; the provision that dividends on preferred stock should be noncumulative; and the abolishment of accrued cumulative dividends on the preferred stock. The corporation was indebted to petitioner in December 1954 by an amount of $125,000. The total indebtedness of the corporation at this time was $182,174.22. This indebtedness of the corporation to petitioner increased so that in 1956 it owed him $144,000 out of total liabilities of $227,984.45. A summary of the corporation's net worth as of January 31 of the following years is set forth: 1953
1954
1955
1956
1957
Total assets
$277,106
$238,196
$191,326
$204,146
$169,436
Total liabilities
254,897
227,059
182,174
227,984
195,287
Net Worth
$ 22,209
$ 11,137
$ 9,152
($ 23,838)
($ 25,851)
Net Worth
Represented by: Capital stock
$337,600
$337,600
$ 71,820
$ 31,470
$ 31,470
Deficit
(315,391)
(326,463)
(62,668)
(55,308)
(57,321)
Net Worth
$ 22,209
$ 11,137
$ 9,152
($ 23,838)
($ 25,851)
Decrease due to
($ 11,072)
($ 1,985)
($ 32,990)
($ 2,013)
loss for the year
*50 On February 6, 1956, after the changes recommended by Maximov to the corporation had been completed, the corporation entered into a contract with David McKay Company, Inc. This contract was more advantageous to the corporation than its agreement with Little, Brown & Company had been in that the ratio for profit sharing was more advantageous to the corporation. In the negotiations leading up to the February 6, 1956, agreement between the corporation and David McKay Company, Inc., the latter was interested in and investigated the financial condition of the corporation. Petitioner's purpose in surrendering the preferred stock to the corporation was to improve the corporation's financial condition. In the joint Federal income tax returns filed by petitioners for the taxable years ended December 31, 1954, 1955, and 1956, petitioner claimed deductions for ordinary losses due to his surrender of preferred stock of the corporation during those years in the amount of $15,975.85, $18,382.31, and $19,940, computed as follows: 1954
1955
1956
Number of shares surrendered
730
755
635
Cost of shares surrendered
$16,000.00
$19,625.00
$19,940.00
Less increase in value of remaining
24.15
1,242.69
None
stock due to the surrender
Ordinary loss claimed
$15,975.85
$18,382.31
$19,940.00
*51 The respondent disallowed the claimed deductions on the ground that they "are not deductible items under the provisions of section 165 of the Internal Revenue Code of 1954" (statement attached to the deficiency notice). Opinion Section 165 of the Internal Revenue Code of 1954 provides for the deduction of losses sustained from the sale "or other disposition of property." Petitioner contends that in disposing of the 2,120 shares of preferred stock during the taxable years 1954 through 1956 he sustained as deductible ordinary losses the difference between the stipulated basis of such stock and the stipulated increase in the value of his remaining stock in the corporation. In support of this contention, petitioner relies on such cases as Commissioner v. Burdick, 59 F. 2d 395 (C.A. 3, 1932), affirming 20 B.T.A. 742; Peabody Coal Co. v. United States, 8 F. Supp. 845 (C. Cls. 1934); Julius C. Miller, 45 B.T.A. 292; and Estate of William H. Foster, 9 T.C. 930. In the Foster case we said: Generally, a payment by a stockholder to the corporation, made to protect and enhance *52 his existing investment and prevent its loss, is a capital contribution, rather than a deductible loss, and should be added to the basis of his stock. * * * On the other hand, when a stockholder surrenders a part of his stock to improve the financial condition of the corporation he sustains a deductible loss, measured by the basis of the stock surrendered, less the resulting improvement in value of the stock retained. Commissioner v. Burdick, 59 Fed. (2d) 395, affirming 20 B.T.A. 742; Julius C. Miller, 45 B.T.A. 292; Peabody Coal Co. v. United States, 8 Fed. Supp. 845. The facts in the Foster case show that William Foster, who held both common and preferred stock in the Foster Machine Company, surrendered part of his preferred stock to the corporation to improve its financial condition. In our opinion we also said: When Foster surrendered 1,848 shares of the preferred stock he parted with property which had cost him $184,800. Under the principle of the Burdick and Miller cases, supra, he then sustained a loss which would be ascertained by deducting from the cost of the property surrendered the resulting enhancement in the value *53 of the common stock he then held. * * * The respondent in his brief contends that "The surrender of a portion of petitioner's stock interest in the corporation constitutes a contribution to capital and the cost of the surrendered stock is added to the basis of the shares retained." Petitioners in their reply brief concede that "There seems to be no question that a prorata contribution of preferred stock by all of the common stockholders does not give rise to the loss contended for in the instant case." We have so held in Edith Scoville, 18 B.T.A. 261, and Charles M. Haft, 20 B.T.A. 431. However, in the instant case, there was no ratable contribution of their stock by the other stockholders of Duell, Sloan & Pearce, Inc. On January 31, 1953, the corporation had 3,024 shares of preferred stock outstanding which was owned by 25 preferred stockholders. Only two of the 25 surrendered preferred stock to the corporation. Some of the stock surrendered was purchased from the other stockholders. On January 31, 1956, the corporation had 559 shares of preferred stock outstanding which was owned by 17 preferred stockholders. Petitioner and Pearce owned no preferred *54 stock of the corporation on January 31, 1956. It is our opinion that the facts in the instant case are practically on all fours with the facts in Julius C. Miller, supra. In that case Miller was one of several stockholders of a corporation which had been operating at heavy losses and had incurred a heavy deficit and was threatened with insolvency. In the taxable year there involved, Miller surrendered 200 of his 550 shares of the corporation's stock to the corporation for cancellation in order to improve the financial position of the corporation. No ratable contribution was made by the other stockholders. As a result of this surrender and cancellation, the value of Miller's remaining 350 shares increased to the extent of $10,178. We held that Miller sustained a deductible loss of the difference between the cost basis to him of $20,000 (the cost of the 200 shares surrendered) and the increase in value of his remaining 350 shares. In the instant case the parties have stipulated the cost basis of all the shares surrendered by petitioner and the increase in value of his remaining shares both common and preferred. We hold that petitioner sustained losses in each of the *55 three taxable years in the amounts set out in our findings. Julius C. Miller, supra. The respondent contends in the alternative that if we should find that petitioners are entitled to a loss deduction, the loss is a capital loss and not an ordinary loss and should be allowed only to the extent provided for in section 165(f) of the Internal Revenue Code of 1954. [1]Section 165(f) applies only to losses from "sales or exchanges" of capital assets. Petitioner neither sold nor exchanged the preferred stock that he surrendered unconditionally and without consideration. In Budd International Corporation, 45 B.T.A. 737, 755-756, reversed on other issues, 143 F. 2d 784 (C.A. 3, 1943), we held that the surrender by a shareholder of part of his shares to the corporation for no consideration was neither a sale nor an exchange of a capital asset and that the loss upon such disposition was deductible to the full extent and was not subject to the limitation applicable *56 to capital losses. Accordingly, we hold that the losses claimed by petitioners and which are set out in our findings are deductible in full as ordinary losses. Decision will be entered under Rule 50. Footnotes
1. SEC. 165. LOSSES. (f) Capital Losses. - Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.↩