**EWING**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 185, Docket 22934.

United States Court of Appeals
Second Circuit.

Argued May 4, 1954.

Decided May 28, 1954.

Randolph E. Paul, New York City, Adrian W. DeWind and Eugene H. Lat-

tin, New York City, of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, and Joseph F. Goetten, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue, respondent.

Before AUGUSTUS N. HAND, CLARK and MEDINA, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The issue presented to us on appeal is whether certain "losses" suffered by the taxpayer were losses incurred in a "transaction entered into for profit" and therefore deductible under Section 23(e)(2) of the Internal Revenue Code.[1] More specifically, the taxpayer seeks to deduct losses incurred from 1941 to 1943 on loans made to the Ballet Theatre, Inc., which became uncollectible.

The Tax Court held that in order to qualify for the deduction it must be shown that the transaction was entered into primarily for profit. Finding that the taxpayer's primary concern in making these loans was the success of the ballet as an art and at the most she merely hoped for a profit, the Tax Court denied the deduction. It is this ruling that the petitioner seeks to overturn. Since the intent of the taxpayer is crucial it will be necessary to state briefly the background of these loans.

The taxpayer came to New York in the middle 1920's to study drama. Later she branched out to singing and dancing lessons and ultimately her interest turned to ballet. By 1937 she was the principal dancer in the Mordkin Ballet, giving performances in New York.

The artistic success of the Mordkin Ballet indicated that a tour might be successful. Accordingly, a corporation, Advanced Arts Ballets, Inc., was formed to produce the ballet and taxpayer purchased 51% of the stock issued. Although ballets were produced by Advanced Arts through 1938 the operation was financially unsuccessful and, in the

---

1. On appeal taxpayer abandoned the contentions, rejected by the Tax Court, that the losses are deductible (1) as a bad debt under § 23(k), or (2) as incurred in a joint venture entered into for profit under § 23(e) (2).

end, taxpayer purchased the remaining outstanding shares of stock of Advanced Arts. In 1939, under the auspices of Advanced Arts, a new dance company, Ballet Theatre, was formed. It was hoped that this dance company, by presenting a new form of ballet, would be more successful financially. Artistically it was a great success but its financial results were, if anything, more discouraging. In her dealings with Advanced Arts from 1938 to 1940 taxpayer loaned $399,600 to finance the troupe and during this same period she claimed approximately $300,000, or three-quarters of this, as a loss deduction.

A new corporation, The Ballet Theatre, Inc., came into existence on April 18, 1940 and purchased the properties of Advanced Arts for $100,000 in stock, an admittedly high figure. During the years in question taxpayer owned beneficially from 285½ to 301 of the 341 shares outstanding of the new corporation. For the 1941 season Ballet Presentations was organized to produce the ballet for Ballet Theatres, Inc. Again the season proved financially unsuccessful, taxpayer losing $62,500 in loans to finance the productions. These continuous large losses all took place prior to 1942 and 1943—the tax years in question. Up to this time taxpayer had suffered a loss of approximately $362,100 in her loans to finance the ballet.

After the failure of Ballet Presentations, Ballet Theatre, Inc., gave an exclusive management contract to Hurok Attractions, Inc., for the two seasons October 1, 1941, through October 1, 1943. Under the agreement Hurok guaranteed a minimum number of performances each year and, under a rather involved arrangement, split profits with Ballet Theatres, Inc., above a fixed point of gross income per week. During this two year period performances were carried out under this agreement but Ballet Theatre, Inc., continued to suffer substantial financial losses.

As she had done in previous years the taxpayer continued to lend large amounts of money to Ballet Theatres, Inc., in or-der to keep the ballet going and to produce new ballets. However, in the instant years the money was loaned under an agreement whereby the obligation to repay ended at the end of each season, and during the season loans could be repaid to her only out of one-half of the profits realized by Ballet Theatre. For the first season taxpayer utilized a promotion company to receive the loans and transfer them to Ballet Theatre, but in the second she made the loans direct. The agreement to repay was the same under both arrangements. During these two years taxpayer loaned $243,500 and $172,500 respectively, in unequal amounts scattered throughout the year. The advances were made as a matter of course upon request of Ballet's business managers. Since Ballet Theatre operated at a substantial loss, no money was ever repaid to taxpayer on these loans. For the first year taxpayer claims a loss of $203,000, the balance having been credited to her account for the following year; for the second, $140,000, the balance being carried over. These are the losses which taxpayer seeks to deduct under Section 23(e)(2).

Although the statute by its terms does not specifically require it, the Supreme Court stated in Helvering v. National Grocery Co., 304 U.S. 282, 289 note 5, 58 S.Ct. 932, 936, 82 L.Ed. 1346, that to secure a loss deduction under Section 23(e)(2) it is necessary that "taxpayer's motive in entering into the transaction was primarily profit." We have cited this statement and expressed our agreement, Feine v. McGowan, 2 Cir., 188 F.2d 738, 740; Fox v. Commissioner, 2 Cir., 190 F.2d 101, 104, and the Tax Court followed it below. While it might be argued that Section 23(e)(2) was meant to require only that the profit motive be substantial, this makes little difference here as either interpretation would support an affirmance. We agree with the Tax Court that taxpayer's primary purpose and perhaps her sole purpose in making these loans, was the enhancement of American ballet as an art. From 1937 to the period in question tax-

payer suffered substantial losses, each year foreboding the possibility of greater losses rather than a chance for a profit. The loan agreement executed during the tax years was highly unfavorable since liability ended at the end of each year, and repayment could only be made out of one-half of the profits realized by Ballet Theatre. The taxpayer argues that the agreement did not mean what it said since small balances of the loans were carried over each year. We find that of little significance since these were large loss years and taxpayer owned a substantial controlling interest in Ballet Theatre, Inc. It should be noted that taxpayer, without investigating the immediate need, advanced money whenever it was requested by the business managers, and large loans were made towards the end of each season when the obligation to repay would shortly end. Her indifference to the financial management of the company and the safety of her investment is pivotal when it is coupled with her admitted love and devotion to the ballet as an art. On the basis of this evidence we can see no error in the finding of the Tax Court. Rather we would say that taxpayer's profit motive was at most quite incidental.

Taxpayer urges that Section 23(e)(2) should permit deductions for losses incurred in commercial ventures and that since the Ballet Theatre, Inc., was run on a commercial basis, taxpayer is entitled to a deduction. It may be true that Ballet Theatre was run on a commercial basis but we think the crucial question is taxpayer's position in respect to it. In making the loans in question we cannot agree that she was drawn by commercial motives or governed by the desire to make a profit. Moreover, it it clear that the continued existence of Ballet Theatre depended largely on taxpayer's socalled "loans." Congress, by taxing gifts and limiting charitable deductions to qualified organizations, did not intend to allow a taxpayer to pour money into an artistic venture to satisfy only a personal desire. Under Section 23(e)(2) a taxpayer can take a deduction only if it is shown that a primary or substantial motive is the desire for profit. Regardless of the artistic appreciation one may have for the ballet or other arts, Congress has not seen fit to permit deductions for contributions made to support them, unless it is clear that the taxpayer had a business purpose in mind.

Affirmed.