E. W. EDWARDS & SONS, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 6154.

United States District Court
N. D. New York.

Aug. 9, 1957.

Moser, Johnson & Reif, Rochester, N. Y., for plaintiff. Bryon Johnson, Jr., and Hastings S. Morse, Rochester, N. Y., of counsel.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., John H. Stull, Acting Asst. Atty. Gen., James P. Garland, Frederic G. Rita, Attys., Dept. of Justice, Washington, D. C., for the United States.

BRENNAN, Chief Judge.

The only question here is whether the sum of $100,000 paid by the corporate taxpayer to the trustees of a trust owning a majority of the stock of the taxpayer corporation to enable them to

compromise a pending litigation against them is deductible from gross income as an ordinary and necessary expense of carrying on its trade or business under the provisions of Section 23(a) (1) (A) Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A).

■ This litigation was submitted upon a stipulation of facts filed with the Court which constitute the trial record. The question is principally one of fact (Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, at page 475, 64 S.Ct. 249, 88 L.Ed. 171), and the background will be briefly summarized.

Daniel M. Edwards died in 1929, a resident of Syracuse, New York. He was the owner of all of the capital stock of the plaintiff corporation which was engaged in operating department stores at Syracuse and Rochester, New York. He was survived by his widow and four children. Under the terms of his will which was duly probated, his entire estate was left in trust, $5,000 to be paid to each child annually from the net income, the balance to his widow during her life. Upon the death of the widow, the trust estate to be divided into four equal trusts, the income to be payable to each of his surviving four children for life.

Trustees duly qualified under the terms of the will. An intermediate account of the trustees was judicially settled covering the time period up to January 25, 1945.

The widow died on September 13, 1945. A second intermediate accounting was filed by the trustees covering the period from January 25, 1945 to September 25, 1948. Objections were filed to the account by two of the children or their representatives. The problem here arises by reason of the subsequent litigation and the ultimate disposal thereof.

The objections as far as pertinent briefly stated were: (1) That each child beneficiary of the trust was entitled to be paid $5,000 per year from 1932 through 1944; (2) That the sum of $108,000 received in 1945 by the trustees as income after the death of the widow and used to pay income taxes upon income received in previous years should be distributed or disbursed to the four children; (3) That for the purpose of computing estate income, distributable to the children through the trusts effective upon the death of the widow, the corporate identity of the estate controlled taxpayer should be disregarded and all net income of the taxpayer corporation should be distributed to the beneficiaries whether or not declared as dividends.

A lengthy litigation which seems to have been a common occurrence in the Edwards estate followed. The Surrogate of Onondaga County disposed of the objections adversely to the objectors' claims as follows: (1) The claim for payments of $5,000 annually from 1932 to 1944 were barred by failure to appeal from the decree of April 5, 1945. No further comment on this claim is necessary. (2) That the use of the $108,000 of income received after the widow's death in 1945 for the payment of income tax for the years prior to 1945 was proper. (3) That the corporate identity of the estate owned corporate taxpayer should not be ignored in the absence of fraud or over-reaching on the part of testamentary trustees acting also as corporate officers or directors and the management of said corporation is governed not by the rules for the administration of estates but by the laws adopted for the government of corporations.

The decision of the Surrogate was affirmed on appeal. In re Edwards' Will 279 App.Div. 841, 109 N.Y.S.2d 844. One judge dissented and the objectors appealed as a matter of right to the Court of Appeals.

It may well be interjected here that while the trustees changed in personnel in 1945, not more than three of them were directors of the taxpayer during that period, the number of such directors being five. The question of impropriety on the part of the trustees in the matter of the payment of the $108,000 in 1945 is eliminated by the decision of the Ap

pellate Division. It is not clear in the record as to the personnel of the trustees and directors at the time of the disputed payment in 1953. The defendant's brief indicates that they were the same persons. No claim of fraud however is made and the matter does not appear of controlling importance although it is a factor which compels the Court's scrutiny.

While the appeal was pending in the Court of Appeals an offer was made by the objectors to settle the litigation by the payment by the trustees of $100,000 to be distributed $25,000 to the beneficiaries of each of the four trusts created upon the death of the widow. The trustees favored acceptance of the offer but found that they had no funds available for payment by reason of rights vested in the beneficiaries. The trustees thereupon submitted the offer in settlement to the directors of the taxpayer corporation suggesting that the corporation might furnish the necessary funds because of its interest in the litigation. The directors thereupon passed a resolution reciting that the continued litigation constituted a hazard to its continued existence. Payment to the trustees of the settlement sum under conditions which would make the decision of the Appellate Division the law of the case and subject to the approval of the Surrogate was authorized. A proceeding was then taken in Surrogate's Court in which the taxpayer corporation appeared, the settlement was approved, payment made and releases given.

The taxpayer did not deduct the above payment of $100,000 from its gross income in its 1953 tax return which if legally proper would reduce its tax for that year in the amount of $52,000. Claim for refund in that amount was made in 1955 upon the contention that such payment must be allowed as a trade or business expense authorized by Section 23(a) (1) (A) of the Internal Revenue Code. The claim was rejected and this action followed.

Plaintiff's contention simply stated is to the effect that the payment was made to insure the integrity and existence of the corporation since an adverse decision in the Court of Appeals might well in effect require the distribution of all of the net earnings of the corporation leaving no funds available for surplus, reserves, capital improvements or working capital. Although the law as expressed by the Surrogate is conceded to be the present law of the state, it is urged that at the time of the settlement the question was an open one. Matter of Hubbell's Will, 302 N.Y. 246, at page 250, 97 N.E.2d 888, 47 A.L.R.2d 176; In re Wacht's Estate, Sur., 32 N.Y.S.2d 871; Matter of de Constantinovitch's Estate, 179 Misc. 818, 38 N.Y.S.2d 658; and Matter of McLaughlin's Estate, 164 Misc. 539, 299 N.Y.S. 559. Plaintiff concludes that a real danger to the corporation existed and that a payment made under such circumstances is legally deductible from gross income as a business expense.

Defendant contends that there was no legal liability or moral responsibility upon the taxpayer for the monies involved in the litigation. The taxpayer was not a party thereto. No decision therein would be binding upon it. That the payment was a voluntary act designed to relieve the trustees (at least some of whom were also directors) from embarrassment in the event they were required to make payment of monies which should have been distributed. It is argued that the payment is so remote from the business of the taxpayer that in no sense can it be considered as an ordinary and necessary expense thereof.

The legal precedents cited or found are not decisive. We may start however with the legal proposition that the action in rejecting the claim is presumptively correct. Welch v. Helvering, 290 U.S. 111, at page 115, 54 S.Ct. 8, 9, 78 L.Ed. 212, and that the statute creating the deduction must be strictly construed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

"All the ordinary and necessary expenses paid or incurred during the taxable year carrying on any trade or business \* \* \*" are discussed if not defined in the oftquoted case of Welch v. Helvering, supra. After citing authorities to the effect that the language of the statute is to be understood in its natural and common meaning, the opinion in the above case recognizes that no exact formula may be applied. "The standard set up by the statute is not a rule of law; it is rather a way of life." All of the above leads to the conclusion that each case turns on its particular facts. The decision must involve an appraisal thereof, giving weight to the statute in accordance with an understanding of business motives and practices or, as stated in Commissioner of Internal Revenue v. Heininger, supra, 320 U.S. at page 472, 64 S.Ct. at page 253, "\* \* \* the ways of conduct and forms of speech prevailing in the business world". That reasonable men may differ in the result is inevitable and the fact that reported decisions are difficult to reconcile is a natural consequence. Welch v. Helvering, supra, 290 U.S. at page 116, 54 S. Ct. 8.

■ The plaintiff's burden here is to establish that the payment made as above was an expense incurred in the business of the taxpayer and that same was both ordinary and necessary in the conduct thereof. The burden has not been carried.

■ The department store business ends with its distribution of income to the holders of its stock. It has no interest in problems affecting the ultimate distribution of such income to trust beneficiaries. The taxpayer had no voice in the creation of the trust and no control over the action of the trustees. The payment added nothing to the corporate structure either by way of tangible assets, goodwill, credit standing or efficiency in its operations.

Plaintiff's argument that the litigation threatened its corporate integrity is not persuasive. The taxpayer was not a party thereto. Any judgment therein was not binding upon it. Administrative bodies and courts are daily making decisions in litigated cases which affect the manner in which business is transacted and profits are expended by persons or corporations in a particular class or relationship. Anti-trust, public service and litigation involving the authority of fiduciaries are ready examples. No one will argue that a third party's contribution to settle such litigations and thereby avoid an indirectly crippling or limiting decision is an expense of the third party's business. Such a holding would allow as an expense of business every voluntary payment made in good faith to avoid or avert any decision which in the judgment of the directors would be indirectly disadvantageous to the donor. Paraphrasing the language of Deputy v. DuPont, 308 U.S. 488, at page 494, 60 S.Ct. 363, 84 L.Ed. 416, the payment here is not a business expense since it proximately results not from the taxpayer's business but from the business of the trustees.

A weighty circumstance appears in the history of the manner in which payment was authorized. The objections to the trustees' account must have been filed in late 1948 or early 1949. At least some of the directors of the taxpayer who were also trustees must have had notice of the claims. The litigation proceeded thereafter and the decision of the Appellate Division was made on January 19, 1952. Notice of appeal to the Court of Appeals must have been filed shortly thereafter. If a real danger to the taxpayer existed, it is naive to believe that the directors were unaware of it. The suggestion that the danger existed and that payment be made came not from the directors but from the trustees who expressed their ideas in a letter and in the resolution of November 9, 1952. The above letter must have been delivered in person because on the same day, the directors of the taxpayer adopted a resolution, recognizing the existence of a danger to the taxpayer and authorizing the payment in compromise. Here there

is no evidence of conflicting advice or prophecy, as to the hazard posed by the trustees. Levitt & Sons v. Nunan, 2 Cir., 142 F.2d 795. The amount involved, the condition of the litigation, the interest of the taxpayer therein, the remote and contingent effect of a decision on its business, the manner in which the danger was brought to the attention of the taxpayer, the fact that the suggestion of compromise was advanced by a third party whose interest was apparent, the further fact that the compromise was negotiated by the trustees, not by the taxpayer, and the ready acceptance of the burden by the taxpayer all militate against plaintiff's contention. My understanding of the "ways of conduct" of corporate affairs in the business world requires a finding that the payment made was a matter of accommodation rather than a business expense.

In view of some of the reported decisions, it is deemed advisable to discuss briefly the question as to whether, even if a business expense is assumed, same was ordinary and necessary. To pay the debt of another from the proceeds of a business is not ordinarily done. Welch v. Helvering, supra, 290 U.S. at page 114, 54 S.Ct. 8. The fact of such payment in itself is not controlling. At least one decision in our own circuit may be said to hold otherwise under the circumstances and considerations applicable to that case. Dunn & McCarthy v. Commissioner, 2 Cir., 139 F.2d 242. Here the transaction which gave rise to the payment cannot be found to be "of common or frequent occurrence * * *" in the department store business. Deputy v. DuPont, supra, 308 U.S. at page 497, 60 S.Ct. 363. Normalcy in the particular business is crucial and controlling. 308 U.S. at page 496, 60 S.Ct. 363.

A short answer to this particular contention is found in the principle enunciated in Commissioner of Internal Revenue v. Doyle, 7 Cir., 231 F.2d 635 in which the statutory words "ordinary and necessary expenses" are construed to mean an economically essential expense of a business as distinguished from an expense merely related thereto. The principle as expressed is highly persuasive and as applied here would foreclose the payment from the exemption of the statute.

The stipulated facts are adopted as the findings of the court.

It is found further that the payment made by the plaintiff in the amount of $100,000 about April 1953, as set forth in the stipulation, was not a business expense of the taxpayer or an ordinary and necessary expense paid in carrying on its trade or business.

It is concluded that plaintiff has failed to establish a cause of action herein and that defendant is entitled to a judgment dismissing the complaint, and it is

So ordered.