George F. ARATA and Carolyn M. Arata, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 204, Docket 25661.

United States Court of Appeals
Second Circuit.

Argued April 4, 1960.

Decided April 27, 1960.

John W. Burke, Jr., New York City (Alfred C. B. McNevin, White Plains, N. Y., John A. Clark, New York City, on the brief), for petitioners.

Meyer Rothwacks, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Carter Bledsoe, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and HINCKS and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

The primary issues presented to us by this petition for review of a decision of the Tax Court are whether "losses" suffered by one of the taxpayers were losses "incurred in a trade or business" or "losses incurred in any transaction entered into for profit" and therefore deductible under § 23(e) (1) or (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(e) (1, 2). Also presented is the question whether the taxpayers are excused from the requirement of filing a declaration of estimated tax because their final return for the year showed that a refund was due them, thus avoiding the imposition of penalties under § 294(d) (1) (A) and (2) of the 1939 Code, 26 U.S.C.A. § 294(d) (1) (A), (2). The Tax Court disallowed the deduction and upheld the Commissioner's imposition of penalties. We affirm, except as to the penalty imposed under § 294(d) (2), with respect to which the Commissioner now concedes **error.**

The taxpayers, George F. Arata and Carolyn M. Arata, are husband and wife. The latter is a party to this action only because she filed a joint return with her husband for 1953, the tax year in dispute. George Arata will be referred to hereafter as petitioner.

Petitioner, at all times here relevant, was president and a director of Snyder & Black, a corporation engaged in the business of creating and manufacturing lithographic advertising. Prior to November 1953, petitioner held 8,191 of the 17,137 shares of Snyder & Black common stock, which at the time was worth $50 per share. Salers, Inc. was a corporation engaged in developing original designs and ideas for display advertising. Its employees consisted mainly of commercial artists, designers and engineers experienced in advertising display work. Snyder & Black was the selling agent for Salers. In November of 1953, 1,000 shares of Salers stock was outstanding. Petitioner owned 235 shares, Snyder & Black (which at the time of Salers' formation had subscribed to and paid for all of the 200 shares then issued) owned 125 shares, and various production personnel of Salers owned approximately 500 shares. Other shareholders in Salers included the vice-president, treasurer, general counsel, and a director of both corporations, the brother and one of the sons of petitioner, the wife of Snyder & Black's art director, and the widow of a former director of Snyder & Black.

During 1953 Salers encountered financial difficulties and was assisted by Snyder & Black in meeting a bank loan and its operating expenses. It suffered a considerable loss for the year and in November 1953 Salers' assets were purchased by Snyder & Black for a nominal price. As of November 10, 1953, Salers stock was worthless. Petitioner thereupon transferred 765 of his shares in Snyder & Black to the shareholders of Salers in exchange for the worthless stock of Salers. Every shareholder of Salers received one share of Snyder &

Black stock for each share of Salers that he transferred to petitioner.

On his 1953 tax return petitioner reported a long-term capital loss of $27,025 with respect to the 235 shares of Salers stock owned by him prior to the transaction in question. This item is not challenged. Petitioner also took as a deduction $38,250 described as a "loss on 765 shares Salers, Incorporated, Common Stock at $50.00 per share declared worthless by Corporation March 1953." The Commissioner disallowed the deduction.

■ Section 23(e) (1) of the Internal Revenue Code of 1939 permits the deduction, in the case of an individual taxpayer, of losses incurred in a trade or business. The petitioner is not entitled to a deduction under this provision since on the record made below the Tax Court could properly find that the loss which the petitioner sustained in disposing of 765 shares of Snyder & Black stock was not one incurred in any *business* of his own, such as the financing of corporate ventures, but was merely a loss flowing from an isolated transaction unconnected with any "business" of the taxpayer, which may have enured to the benefit of Snyder & Black. It is, of course, well settled that for tax purposes a corporation will not ordinarily be regarded as the alter ego or agent of its principal or even its sole stockholder. Burnet v. Clark, 1932, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Deputy v. Du-Pont, 1940, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416. The corporation is a separate and distinct entity. Therefore, "a taxpayer, in order to deduct his outlay as a business expense, must show that the loss occurred in a separate business of his own rather than that the loss occurred in the business of a corporation." Folker v. Johnson, 2 Cir., 1956, 230 F.2d 906, 909. Even assuming that the loss was incurred in order to retain the services of the Salers personnel, it was the business of Snyder & Black that was thereby furthered, not that of the petitioner.

Petitioner alternatively contends that the $38,250 was deductible as a loss "incurred in [a] transaction entered into for profit, though not connected with the trade or business." Section 23(e) (2). He argues that his purpose in exchanging stock in Snyder & Black for the worthless Salers stock was to induce the Salers personnel who held stock to come to work for Snyder & Black when Salers ceased operations in November of 1953 rather than joining a competitor. Petitioner says that he thereby hoped to profit by an increase in the value of his Snyder & Black stock, which he believed would result from the increased profits that the services of these employees would bring to the company.

■ The Supreme Court stated in Helvering v. National Grocery Co., 1938, 304 U.S. 282, 289 note 5, 58 S.Ct. 932, 936, 82 L.Ed. 1346, that to secure a loss deduction under § 23(e) (2) it is necessary that the "taxpayer's motive in entering into the transaction was primarily profit." We have since applied this test on several occasions. Ewing v. Commissioner, 2 Cir., 1954, 213 F.2d 438, 439; Fox v. Commissioner, 2 Cir., 1951, 190 F.2d 101, 104; Feine v. McGowan, 2 Cir., 1951, 188 F.2d 738. Relying upon these authorities, the Tax Court found as a fact that the petitioner's prime motive in exchanging his stock was not to make a profit. There is more than adequate support for this finding. Despite petitioner's statement that the purpose of the transaction was to persuade the Salers employees to join Snyder & Black, petitioner admitted on cross-examination that only one of Salers' employees ever indicated that he intended to seek work elsewhere than with Snyder & Black. Moreover, even as to this employee petitioner exacted no promise to remain with Snyder & Black at the time of the exchange of stock. Nor did petitioner explain how the alleged purpose of the transaction was furthered by the transfer of stock to the Salers stockholders who were not among the production personnel of Salers. He could scarcely have hoped to profit by the transfer of Snyder & Black stock to his own son or brother or to the officers of Snyder & Black or

their spouses. Similarly, the transfer of stock to Snyder & Black itself is hardly explicable by reference to profit motives. While it may be that profit was one of the motives influencing the conduct of petitioner, the facts strongly support the inference that petitioner was principally motivated by a feeling of obligation voluntarily to indemnify the Salers stockholders for their losses. Since the profit motive was not the primary impetus to the transfer, it was proper to disallow the deduction.

 Under § 58(a) (1) of the 1939 Code petitioner was required to file a declaration of estimated income tax in March 1953. He failed to do so. The Commissioner imposed a penalty under § 294(d) (1) (A) of the Code, which states that a failure to file a declaration shall be excused only if it can be "shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect." Petitioner argues that his failure was due to an honest difference of opinion as to the amount of tax due and that in any event he should not be penalized under § 294(d) (1) (A) since his final return for 1953 showed that a refund was due to him. Neither of these reasons excuses the filing of a declaration of estimated tax. Section 58 is broad in its coverage, requiring every taxpayer with an income from wages or other sources in excess of stated amounts to file a declaration. Effectuation of its purposes would be substantially hindered if every difference of opinion between the taxpayer and the government as to the tax due excused the filing of a declaration. Obviously, § 294(d) (1) (A) did not contemplate that such a difference of opinion could constitute "reasonable cause." Nor does the fact that a refund may ultimately be due provide an excuse. Such a consideration is foreign to the purposes of § 58 and equally irrelevant as an excuse for failure to file a declaration.

The Commissioner also imposed a penalty upon the petitioner under § 294 (d) (2) for substantial underestimation of his estimated tax by reason of the same failure to file a declaration. Since the date of the Tax Court's decision upholding this penalty, the Supreme Court in Commissioner of Internal Revenue v. Acker, 1959, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127, has held that failure to file a declaration of estimated tax does not constitute a declaration of zero tax for the purpose of imposing this additional penalty. In view of this decision, the Commissioner concedes that the Tax Court was in error in approving this penalty.

The decision of the Tax Court is therefore reversed as to the imposition of the penalty under § 294(d) (2). In all other respects, the decision is affirmed.