James E. AUSTIN and Elizabeth G. Austin, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 34, Docket 26908.

United States Court of Appeals Second Circuit.

Argued Dec. 14, 1961.

Decided Jan. 19, 1962.

Ben A. Matthews of Harper & Matthews, New York City (Vincent P. Uihlein, New York City, on the brief), for petitioners.

Donald P. Horwitz, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge.

This is a petition for review of a decision of the Tax Court determining a deficiency in income tax for the year 1955. The Tax Court, sustaining a ruling of the Commissioner, held that a loss incurred by petitioners on the sale of real property was not deductible as a loss incurred in a trade or business or in a transaction entered into for profit, within the meaning of § 165 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 165).[1]

1. The material parts of § 165 read as follows:

"§ 165. Losses.

"(a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \*

"(c) Limitation on losses of individuals. —In the case of an individual, the deduction under subsection (a) shall be limited to—

The Tax Court found that the property involved "was purchased by petitioners *primarily* for a residence and *secondarily* to make a profit." Petitioners contend that, since the word "primarily" does not appear in the statute, and since the Tax Court found that the transaction was entered into for profit, the deduction must be allowed. The Tax Court, they say, has no power to classify petitioners' motives as primary or secondary; once it is established that realizing a profit was a motive for purchase of the property the requirements of the statute have been met.

But the position for which petitioners contend would not provide a workable interpretation of § 165. It is true generally of people who buy property for residential purposes that they are interested in making potentially profitable purchases. The statute makes no provision for the apportionment of the loss when a transaction is entered into both to satisfy a personal or family need and to make a profit. A primary motive of acquiring a family residence brings the purchase within the ambit of § 262 of the Internal Revenue Code, 26 U.S.C.A. § 262, which provides that "no deduction shall be allowed for personal, living, or family expenses." The logical interrelation of § 165 and § 262 requires a decision as to which of the two motives was dominant, so that one or the other section can be applied. And the decisions of the Supreme Court and of this court have been consistent with this result. In Helvering v. National Grocery Co., 304 U.S. 282, 289 note 5, 58 S.Ct. 932, 936, 82 L.Ed. 1346 (1938), the Supreme Court said: "[T]he deductibility of losses under [§ 165(c)] [2] may depend upon whether the taxpayers' motive in entering the transaction was primarily profit." [3] This court

has repeatedly held that, in determining the deductibility of a loss, the primary motive must be ascertained and given effect. Arata v. Commissioner, 277 F.2d 576, 578–579 (2d Cir. 1960); Ewing v. Commissioner, 213 F.2d 438, 439–440 (2d Cir. 1954); Meurer v. Commissioner, 221 F.2d 223 (2d Cir. 1955). Cf. Gevirtz v. Commissioner, 123 F.2d 707 (2d Cir. 1941).

However petitioners also assert that the Tax Court's finding as to motive is a "legal conclusion," and that as such it is not subject to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which requires that findings of fact be upheld unless "clearly erroneous." It is contended that this court is free to draw from the undisputed evidentiary facts legal conclusions different from those drawn by the Tax Court. The Supreme Court has recently ruled against this contention. In Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) the dispositive issue was whether certain property was "acquired by gift" within the meaning of § 102(a) of the Internal Revenue Code which excludes the value of gifts from taxable income. [4] The Tax Court had sustained the Commissioner's ruling that it had not been so acquired. The Sixth Circuit, treating the Tax Court decision as a legal conclusion not within the ambit of Rule 52(a), drew a contrary inference from the evidentiary facts and found for the taxpayer. [5] The Supreme Court reinstated the Tax Court decision. Mr. Justice Brennan, for the Court, stated the reasons for applying the "clearly erroneous" test to the findings of the Tax Court:

"Decision of the issue presented in these cases must be based ultimately on the application of the fact

"(1) losses incurred in a trade or business;

"(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *."

2. The reference in the National Grocery case was to § 23(e) of the Revenue Act of 1928, 45 Stat. 791, which is substantially similar to § 165(c) of the 1954 Code.

3. See Fox v. Commissioner, 190 F.2d 101, 194 (2d Cir. 1951); Feine v. McGowan, 188 F.2d 738 (2d Cir. 1951).

4. 26 U.S.C. § 102(a) (1958).

5. 265 F.2d 28 (6th Cir. 1959).

finding tribunal's experience with the mainspring of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirms us in our conclusion that primary weight in this area must be given to the conclusion of the trier of fact. * * *

* * * * * *

"One consequence of this is that appellate review of determinations in this field must be quite restricted. * * * Where the trial has been by a judge without a jury, the judge's finding must stand unless 'clearly erroneous.' Fed.Rules Civ. Proc. 52(a). * * * The rule itself applies also to factual inferences from undisputed basic facts * * * as will on many occasions be presented in this area * * * And Congress has in the most explicit terms attached the identical weight to the findings of the Tax Court. I.R.C. § 7482(a)." [6]

The Court expressly disapproved prior authority to the contrary.[7]

■ We are thus required to affirm the Tax Court's finding unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The evidence from which the Tax Court drew its conclusions as to motive is essentially uncontroverted. In brief summary the facts are as follows:

In and before 1949, petitioner James E. Austin and his family resided in Riverside, Connecticut, within commuting distance of New York City. Austin was an executive of two affiliated manufacturing corporations which maintained

joint executive offices in New York City. In 1949, the directors of both companies decided that, upon construction of a suitable building, the joint offices would be moved to Poughkeepsie, New York, the location of one of the manufacturing plants. There were certain practical inconveniences involved in the maintenance of executive offices distant from New York City and a minority group in the management opposed the move for this reason. Austin believed that the decision would be reversed if the minority group gained control of the management of the corporations.

In the meantime, however, it was necessary for Austin to find a residence within commuting distance of Poughkeepsie. Since it was his thought that the move might be temporary, and since he had previously realized a profit on the purchase and sale of a house, Austin decided to buy property in the Poughkeepsie area which he was likely to be able to resell at a profit when the occasion arose. In August 1950, eighteen months after the executive decision to move to Poughkeepsie, but before the move had been effected, Austin found a property which he thought could be resold at a profit— 220 acres with a house and some smaller buildings in Millbrook, New York. He purchased this property for $28,000 and immediately undertook to make certain alterations on the main house. The cost of the alterations ultimately amounted to about $40,000.

In November, 1950, Austin sold his home in Riverside, Connecticut, but since the prospective corporate move had not yet been effected, he and his family moved into a rented house in Riverside.

In April 1951, newly elected directors of the two corporations rescinded the earlier decision and decided to retain the executive offices in New York. Thereafter, petitioner's rented residence in Riverside became unavailable and, on May 30, 1951, he and his family moved to the Millbrook property despite the necessity for him to be in New York City

---

6. 363 U.S. at 289–291, 80 S.Ct. at 1198.

7. 363 U.S. at 289 n. 11, 80 S.Ct. 1190.

every week day. The Austins resided in Millbrook until August 1954. Within a week after moving to Millbrook, Austin put the property up for immediate sale. Every effort was made to sell the property from June 2, 1951 and to rent the property after July, 1952, when the alterations were substantially complete. The house and part of the land were finally sold in March, 1955.

Austin and his wife filed a joint income tax return for the year 1955. In this return, they claimed a deduction of $30,470 for the loss occasioned upon the sale of the property.

The evidence establishes that Austin acquired the property in Millbrook because it was necessary that he reside within commuting distance of Poughkeepsie and were it not for this business requirement, the property would not have been purchased. He undertook the renovations to accommodate the house to the particular needs of his family.[8] He and his family moved to the Millbrook property despite the cancellation of the projected relocation of his office, and remained there, despite considerable inconvenience, for approximately three years, a period far beyond that necessary to supervise the completion of the alterations. He told the real estate agent that he was putting the house up for sale because of a change in his business plans. Had the change not taken place, Austin and his family would presumably be living on the Millbrook property today. Against all this, we have the self-serving statements of Austin and his wife that their principal motivation in purchasing the property was profit.

On this record, we cannot conclude that it was clearly erroneous for the Tax Court to find that the property in issue was acquired primarily for a residence.[9]

Petitioners' claim that Austin was engaged in the purchase and sale of real property as a trade or business finds only the meagerest support in the evidence. The Tax Court was clearly correct in rejecting this claim.

Affirmed.

---

8. "Q. * * * With respect to that property, what did you do in connection with improvements and repairs? A. Well, when I bought it, I didn't think I was going to have to do much of anything, it looked so nice. But we had five children, we had four children and one almost here. Now, we have five. When we bought it, we had the usual problems with help and concluded that we would recon-struct this house, particularly the working areas, the kitchen and the cellar and the roof and the attic, so that we could do with a minimum of help."

9. Our decision is, of course, confined to the house and the surrounding land that were sold in 1955. The remaining 190 acres of land is not involved in the present litigation.