**Simon Gerberich STEIN et al., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 5–1472–C.**

United States District Court
S. D. Iowa,
Central Division.

Aug. 14, 1964.

William P. Ellwood and Robert C. Tilden, Cedar Rapids, Iowa, for plaintiff.

Victor Schnee, Tax Div., Dept. of Justice, Washington, D. C., and Donald A. Wine, U. S. Atty., Des Moines, Iowa, for defendant.

STEPHENSON, Chief Judge.

### FINDINGS OF FACT

1. This is a suit by the plaintiff, Simon Gerberich Stein, hereinafter referred to as the "taxpayer", for the recovery of certain income taxes and interest assessed and collected. From March 1931 to September 1953, taxpayer made payments totalling $41,568.46 for the purpose of promoting a hydroelectric project, hereinafter referred to as the "Moscow Dam Project." Taxpayer urges three separate and alternate counts in his complaint for recovery of part of this amount expended, that is:

"COUNT I. Part of the payments by taxpayer resulted in a loss to him and were therefore deductible in the computation of his 1957 Federal Income Tax Return according to Section 165 of the Internal Revenue Code of 1954;

"COUNT II. That the payments were made to enhance the value of lands identified as the Stein-Barry lands and therefore attributable to the basis of these lands and that their subsequent sale at a loss is an ordinary loss under Section 1231 of the Internal Revenue Code of 1954 entitling taxpayer to certain refunds for the years 1956, 1957;

"COUNT III. That the payments made in the years 1950, 1951 and 1952 should have been allowed as a deduction to taxpayer as ordinary and necessary business expense payable during each of these years according to § 23(a) of the Internal Revenue Code of 1939."

2. As to Counts I and II, the assessment of the taxes, the filing of the claim for refund, the disallowance of the claim for refund, and the filing of the instant suit were all timely and the parties do not dispute these aspects of the case. In regard to Count III, however, the defendant contends that the filing of the claim for refund was not timely.

3. Taxpayer is a banker and businessman in the city of Muscatine, Iowa. During the years when the payments, to

which the Court's attention is directed, were being made, taxpayer owned a furniture store and also helped organize and operate a grain processing company in addition to his duties as a banker. Also during the period of years with which the Court is now concerned, taxpayer owned certain rental properties in and around Muscatine.

4. Federal Construction Company was organized in 1912 to promote the Moscow Dam Project. Federal acquired ninety-five percent of the riparian rights along the Cedar River for the area that would be affected by the dam if it were built. Taxpayer's father was a shareholder in Federal and upon his death in 1926 Taxpayer succeeded to his interest which amounted to 19/90 of the whole.

5. Taxpayer's father owned some land above the dam site together with one Nick Barry. Upon the death of taxpayer's father, taxpayer succeeded to his interest in this land which is referred to as the Stein-Barry land.

6. Prior to his death, taxpayer's father had been interested in the Moscow Dam Project.

7. Around 1931 one Harry J. Strong became connected with the project and through his efforts and the efforts of others the taxpayer started giving money to these men for the promotion of the project.

8. Mr. Strong and others formed the First Iowa Hydro-Electric Co-operative in 1938 through which the campaign to finance and construct the project was intensified. The major portion of taxpayer's donations after 1938 went toward engineering and legal services for "First Iowa" although some of the money was used by Mr. Strong to pay his personal expenses.

9. At no time did taxpayer own any interest in First Iowa either as a member, shareholder or otherwise. There was no obligation on the part of First Iowa, Mr. Strong or any other to repay all or any part of the $41,568.46 expended by the taxpayer. These donations were not at any time considered a loan and none of them were ever evidenced by promissory notes or other writings other than in the personal account books of the taxpayer. No interest was ever received or requested.

10. Taxpayer and Jessie W. Stein, his deceased wife, filed joint returns and paid the tax shown thereon to be due for the years 1950, 1951, 1952, 1956 and 1957; the years to which the Court's attention is directed. A claim for refund of 1957 taxes was filed on January 15, 1958, and a statutory notice of disallowance was issued on October 17, 1960. A claim for refund of 1956 taxes and an amended claim for refund of 1957 taxes were filed on February 16, 1961. A waiver of statutory notice of claim disallowance was filed on May 11, 1961. Claims for refund of 1950, 1951 and 1952 taxes were filed and statutory notices of disallowance were issued for each claim on October 17, 1960.

11. In regard to Count I, taxpayer contends that these payments were made over the years upon the expectation that they would help promote the financial backing required for the construction of the Moscow Dam Project and that the construction and operation of the dam and the hydro-electric plant would result in economic benefit and gain to him in excess of his expenditures. And since the project was never consummated that his payments are a deductible loss within the meaning of Sections 165(a), 165(c)(2) of the Internal Revenue Code of 1954.

12. The taxpayer urges that his payments were prompted primarily by a profit motive and thereby qualify for favorable deduction treatment within the meaning of Section 165(c)(2).

13. The taxpayer contends that he would have realized a profit upon the following if the dam project were built:

(a) By sale of the Stein-Barry lands to the project.

(b) By sale of the riparian rights owned by Federal Construction Company to the project.

(c) By increase in value of taxpayer's land near Mad Creek because of the reduced danger of their flooding.

(d) By increase in property values and business activity because of cheaper electricity.

(e) By an increase in banking business.

14. The government contends in regard to Count I that what the taxpayer paid out for the promotion of the Moscow Dam Project is not a deductible loss because § 165(c)(2) limits the losses allowed as a deduction under § 165(a) to those incurred in a transaction entered into for profit and the defendant maintains that taxpayer did not have the requisite profit motive when he made these payments to Strong and the others to be entitled now to avail himself of the provisions of § 165(c)(2).

15. In regard to Count I, the Court finds that profit was not the taxpayer's primary or substantial motive in making the payments to Mr. Strong and others for the promotion of the Moscow Dam Project. Arata v. Commissioner of Internal Revenue, 2 Cir., 277 F.2d 576 (1960); Ewing v. Commissioner of Internal Revenue, 2 Cir., 213 F.2d 438 (1954).

16. The Court finds that taxpayer's motives over the twenty-two year period when the donations were made included, besides a hope for profit, the motive of civic or community betterment, the motive to continue a project in which taxpayer's father had believed in and supported and the motive that developed in the latter years to try and recapture what he had already expended.

17. In regard to Count II the Court finds that the money which was expended by taxpayer was for the promotion of the Moscow Dam Project and did not benefit, directly or indirectly, the Stein-Barry lands or create a market for them. Said payments are too remote and cannot be said to be directly related to improving the value of the Stein-Barry land.

18. Taxpayer's claims for refund contained in Count III were filed on July 2, 1959.

19. Taxpayer had more than one business or trade; he was a banker, a businessman and a landlord.

20. The payments made in the years concerned in Count III of the complaint were not made in the course of or in connection with taxpayer's business.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this case under Title 28, U.S.C. § 1346(a)(1).

2. Any finding of fact which may be considered a conclusion of law is hereby concluded as a matter of law.

3. The determination of the Commissioner carries the presumption of correctness and the taxpayer has the burden of proving this determination to be wrong. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). The taxpayer has not maintained the burden of proof of the essential elements and facts of Count I, II, or III of the complaint.

4. The law is with the government and against the taxpayer on the issues of the complaint and the answer.

5. In order for a taxpayer to come within the scope of Section 165(c)(2) of the Internal Revenue Code of 1954 profit must be the primary or substantial motivating factor in expending money upon which, as it turns out, a loss is realized. Arata v. Commissioner of Internal Revenue, 2 Cir., 277 F.2d 576 (1960); Ewing v. Commissioner of Internal Revenue, 2 Cir., 213 F.2d 438 (1954).

6. The mixed motives of the taxpayer are insufficient to qualify for the benefits provided under Section 165(c)(2) of the Internal Revenue Code of 1954.

7. In regard to Count II the expenditures of the taxpayer to Strong and others are too remote to be chargeable to capital account of the Stein-Barry land within the meaning of Section 1016(a)(1) of the Internal Revenue Code of 1954 and any adjustment of basis would be improper.

**822**

8. Since these payments are not properly chargeable to capital account it is unnecessary for the Court to consider whether they were expended in the course of taxpayer's trade or business.

9. Taxpayer's claim contained in Count III is not barred from consideration by any statute of limitation by reason of the protection afforded such a claimant under Sections 1311, 1312(4) and 1313(a)(3)(B) of the Internal Revenue Code of 1954.

10. The expenditures made by taxpayer in the years concerned under Count III are not for carrying on a trade or business within the meaning of Section 23(a) of the Internal Revenue Code of 1939. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1939); E. W. Edwards & Sons v. United States, D. C., 162 F.Supp. 97 (1957).

11. Neither were these payments "ordinary and necessary" expenses which is required for favorable deduction treatment under Section 23(a) of the Internal Revenue Code of 1939.