**HAYDEN ISLAND, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civil No. 72-345.**

United States District Court,
D. Oregon.

July 9, 1974.

Souther, Spaulding, Kinsey, William-son & Schwabe, Stephen B. Hill, Port-land, Or., for plaintiff.

Scott P. Crampton, Asst. Atty. Gen., Stanley F. Krysa, James N. Flaherty, Dept. of Justice, Washington, D.C., Sid-ney I. Lezak, U.S. Atty., Vinita Jo Neal, Asst. U.S. Atty., Portland, Or., for de-fendant.

## OPINION

SOLOMON, District Judge:

Hayden Island, Inc. (plaintiff) seeks to recover a portion of the corporate in-come taxes paid under deficiency tax as-sessments. The assessments were based on a finding by the Commissioner of In-ternal Revenue (Commissioner) that certain water and sewerage pipes and other facilities were not "section 38 property" within the meaning of 26 U. S.C. § 48(a), and hence not available for investment tax credits.

The issue here is whether the Com-missioner erred in disallowing the invest-ment tax credits claimed by the plaintiff during the tax years ending December 31, 1966, and December 31, 1967.

From the late 1920's to the mid-1960's, plaintiff operated an amusement park on Hayden Island (Island) in the Columbia River (River). In the early 1960's, plaintiff investigated the feasi-bility of developing the Island as a resi-dential and commercial area and began to purchase additional Island acreage. To its amusement park, plaintiff added a mobile home park and boat moorage. Also, plaintiff leased land as commmer-cial property for restaurants, service stations, a grocery store, a bowling alley and a marina. Later, the amusement park was demolished and replaced by a large shopping center. After the tax pe-riod in question, apartments and condo-minium units were built.

Plaintiff supplied all these activities with water and sewage disposal services. Water was obtained from wells and dis-tributed through a system which plain-tiff installed. As the activities on the Island expanded through the 1960's, plaintiff laid additional pipes to expand the water distribution system. Origi-nally, sewage was piped directly into the Columbia Slough, but since 1964 plain-tiff constructed sewage treatment facili-ties for the Island. The sewage plant, sewer lines and additional water lines are the investments for which plaintiff seeks a tax credit.

Plaintiffs have billed in various ways for these services. The amusement park paid through bookkeeping entries in plaintiff's books. Almost all the water to lessees was metered, and they were billed based on meter readings. One restaurant paid a flat monthly fee of $75 for water and $75 for sewage dis-posal. The mobile home park tenants paid for water and sewage disposal in their rents, plaintiff allocating $3 for water service and $3 for sewage disposal monthly.

Plaintiff's charges were not based on detailed cost analysis. Prior to 1969, plaintiff did not separate the costs of its activities on the Island. Without ade-quate cost data, the charges were deter-mined by looking at the charges of simi-larly sized utility systems and of the nearby Portland, Oregon, system.

Section 48(a) of the 1954 Internal Revenue Code, 26 U.S.C., defines "sec-tion 38 property," property for which an investment tax credit is allowed. Sec-tion 38 property is depreciable property with a useful life of three years or more which is

(A) tangible personal property, or

(B) other tangible property (not including a building and its structural components) but only if such property

(i) is used as an integral part of . . . furnishing . . . wa-

ter, or sewage disposal services . . . .

26 U.S.C. § 48(a)(1)

## A. TANGIBLE PERSONAL PROPERTY

■ Plaintiff asserts that the sewage treatment plant for which it claimed a tax credit in the tax year ending December 31, 1966, was tangible personal property within the meaning of 26 U.S.C. § 48(a)(1)(A). In 26 C.F.R. § 1.48-1(c), tangible personal property is defined as "any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures . . . ." In judging whether property is "personal" one must consider the manner in which the property is affixed to the land and the permanence with which it was designed to remain in place. Everhart v. Commissioner, 61 T. C. 328, 330 (1973)

■ In my view the sewage treatment plant was tangible personal property. The cases on which the government relies are not in point. Here the whole plant was transported by truck. It was installed at ground level on a cement slab used to assure a level footing. It was purchased with the intent that it would be moved from site to site on the Island. The plant was not "inherently permanent." In Everhart, the sewage plant was installed underground, and in Tejas Properties, Inc. v. United States, 70-1 U.S.Tax Cas. ¶ 9240 (E.D.Tex.1970), the sewage disposal system consisted of underground sewage lines.

## B. OTHER TANGIBLE PROPERTY

■■ I find that the sewage plant and water and sewage lines are "other tangible property" used in furnishing water and sewage disposal services. Nevertheless, there is an additional requirement which a taxpayer must meet to claim a tax credit for such property. Regulation 1.48–1(d), 26 C.F.R., provides that a credit may be taken for "other tangible property" used in furnishing utility services only "by a per-

son engaged in a trade or business of furnishing any such service . . . ." Plaintiff argues that since the regulation reads "a trade or business" rather than the trade or business, it required only (1) that plaintiff be in a trade or business, and (2) that while in that trade or business, plaintiff furnish water and sewage disposal services.

This is an improper reading of the regulation, which says, "a trade or business of furnishing." It is therefore necessary to determine whether plaintiff is in a trade or business of furnishing utility services. See Mt. Mansfield Co. v. Commissioner, 50 T.C. 798 (1968), aff'd per curiam, 409 F.2d 845 (2d Cir. 1969); Evans v. Commissioner, 48 T.C. 704 (1967), aff'd per curiam, 413 F.2d 1047 (9th Cir. 1969). The regulation does not require that the taxpayer be solely in the business of furnishing utilities, but such utility services may not be merely incidental or supportive of the taxpayer's primary business of land development.

■ Plaintiff, before and during the tax years in question, was not in the trade or business of furnishing water or sewage disposal services. Unlike Evans v. Commissioner, supra, plaintiff operated an entire utility system, including the supplying of water from ground to tap; and unlike Tejas Properties, Inc. v. United States, supra, plaintiff billed the users of the services regularly. Nevertheless, these differences do not require a different result.

I find that plaintiff had no thought of making a profit from its utility activities. It did not separately account for the costs of the system. Originally, the systems were built to provide water and sewage disposal services for its own amusement park. Later, the systems were expanded to develop land for commercial leases and mobile home parking. Sewage treatment plants were installed to clean the river.

■ The intent to make a profit from an activity need not be reasonable in order for the activity to be a trade or

business. Mercer v. Commissioner, 376 F.2d 708 (9th Cir. 1967). But there must be an actual, good faith, intent to profit. *See* Evans v. Commissioner, *supra.* I find that there was no such intent during the tax years in question.

Plaintiff is entitled to the investment tax credit for the sewage treatment plant for its tax year ending December 31, 1966. In all other respects plaintiff's claims for relief are denied.

This opinion shall serve as findings of fact and conclusions of law under Fed. R.Civ.P. 52(a).