**Angus J. DePINTO and Margaret F. DePinto, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ. 74–10 Phx. WPC.**

United States District Court, D. Arizona.

Dec. 9, 1975.

See also, D.C., 407 F.Supp. 5.

Powers, Boutell, Fannin & Kurn, Phoenix, Ariz., for plaintiffs.

Douglas G. Anderson, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

The instant action is one for the refund of certain federal income taxes and interest and penalty paid for the years 1964, 1965 and 1967. The Court has jurisdiction over the matter pursuant to 28

1

U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. The parties, with the approval of the Court, stipulated that the case be submitted to the Court for decision based upon certain documents, exhibits and a deposition of Angus J. DePinto (all of which are on file herein).

The factual background for the instant action goes back almost 30 years. In early 1947 DePinto struck up a friendship with one James E. Kelly. In 1955 DePinto became a director of United Security Life Insurance Company (hereinafter United) at the request of Kelly and out of friendship for him. Kelly was the majority stockholder of United which was formed under the laws of the state of Arizona. In 1957, at a time when United's capital was already impaired, United's board of directors caused $314,794 of its assets to be conveyed to Kelly through a series of transactions in exchange for his stock.

United was later merged into and became known as the Provident Security Life Insurance Company (hereinafter Provident). In 1958, a derivative shareholder's action was instituted against DePinto and other members of Provident's board of directors seeking the recovery of damages based upon the alleged wrongful acts and omissions which arose out of the 1957 transactions with Kelly. Judgment was entered on June 28, 1965, in the Federal District Court for the District of Arizona against DePinto alone in the amount of $314,794 plus interest and costs. The judgment was affirmed in *DePinto v. Provident Security Life Insurance Company*, 374 F.2d 37 (9th Cir. 1967) (hereinafter *DePinto* (1)). DePinto and his wife attempted to enjoin the collection of the judgment out of their community property upon the grounds that the judgment was not a community debt. The trial court rejected that argument and was affirmed on appeal in *DePinto v. Provident Security Life Insurance Company*, 374 F.2d 50 (9th Cir. 1967) (hereinafter *DePinto* (2)).

On August 18, 1965, facing debts which appeared to exceed his resources, DePinto filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. On March 10, 1966, DePinto was adjudicated a bankrupt. On June 7, 1968, after the payment of all debts including the judgment in the Provident case, an order was issued revesting title in DePinto and his wife of properties whose value was in excess of $200,000.

During the period of the administration of the bankruptcy estate both DePinto and the trustee filed separate tax returns with each of them accounting for his own income and losses. The trustee's losses exceeded the income of the bankruptcy estate. DePinto in the instant action wishes to combine the trustee's income and losses with his own income and losses (sustained during the administration of the bankruptcy estate) pursuant to 26 U.S.C. § 671 et seq. (Grantor Trust taxation). DePinto claims that the Provident judgment ($314,794) was deductible pursuant to 26 U.S.C. § 162(a) and/or 26 U.S.C. § 165(c). The result of such a combination would be a substantial tax refund to DePinto. It is upon this basis that DePinto has instituted the present action against the United States for a tax refund.

Although a number of issues are raised by the parties, only two are significant in relation to the claims made in the instant case.

### Business or Trade

DePinto asserts that the losses which he suffered and the costs related thereto were "incurred in a trade or business" (26 U.S.C. § 162(a)) or were "incurred in any transaction entered into for profit, though not connected with a trade or business" (26 U.S.C. § 165(c)). It should be noted that the attorney's fees paid in that action are subject to the same tax treatment as the losses and their fate is determined by the characterization applied to such losses. *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963).

The nexus of DePinto's contention is centered on a determination of whether or not DePinto undertook the

position of director of Provident (United) as the result of a profit motive. *See, Five Lakes Outing Club v. United States,* 468 F.2d 443 (8th Cir. 1972); *Glimco v. C. I. R.,* 397 F.2d 537 (7th Cir. 1968), *cert. denied,* 393 U.S. 981, 89 S.Ct. 452, 21 L.Ed.2d 442 (1968). In this circuit the crucial question is the intent of the taxpayer in relation to the undertaking. *See, Mercer v. C. I. R.,* 376 F.2d 708 (9th Cir. 1967); *Hayden Island, Inc. v. United States,* 380 F.Supp. 96 (D.Or. 1974).

As part of the stipulation of facts agreed to in this action the affidavit of DePinto, which was part of the record on appeal in *DePinto* (2) and is on file herein, was made part of the facts for consideration in the instant case. In that affidavit DePinto states under oath that:

■ During the years he was on the board of directors of United and Provident he had a "fully occupied" medical practice and no need for additional patients or advertising.

■ He served on the board of directors *solely* as an act of friendship for James Kelly.

■ He did not and did not expect to receive any compensation for such service.

■ He and his wife did not receive or expect to receive any monetary benefits for his service on the board of directors.

DePinto, aware of this apparent contradiction with his present claims against the government, maintains that his affidavit is not controlling since the courts in *DePinto* (1) and *DePinto* (2) found that he was liable as a director of the corporation for his conduct and that the judgment was a community debt. The thrust of DePinto's argument appears to be that by imposing liability and adjudging that the debt was a community debt, the courts had found that DePinto was therefore in the trade or business of being a director or that he had entered upon such a course out of a motive for profit. A careful reading of *DePinto* (1)

and *DePinto* (2) does not support such a contention.

In *DePinto* (1) the court found that:

■ DePinto was not an active director of the company.

■ DePinto attended few meetings, apparently about two.

■ DePinto signed minutes of meetings he did not attend even though the minutes reflected his attendance.

■ DePinto was totally uninformed about the financial affairs of the corporation.

All of the above findings of the court in *DePinto* (1) are consistent with the affidavit of DePinto that he did not have a profit motive in becoming a director of United and then of Provident. His total lack of interest in the financial affairs of the company highlights that lack of a profit motive.

In *DePinto* (2) the court found that:

■ Under Arizona law, as it was at that time, a married man's debts were assumed to be community obligations.

■ DePinto's role as a director could have conferred prestige and status on the community.

■ Serving as a director was an ethical form of advertising which could have benefited the community's interest in his medical practice.

■ His directorship could have furthered the community's friendship with Kelly.

■ DePinto had the right to vote himself director's fees even though he never did so.

■ Only two of the above findings could possibly refute DePinto's statements as to his lack of profit motive. The first of these is that it could have been an ethical form of advertising for DePinto to have served on the board of directors. DePinto, as noted earlier, in his affidavit denied that he (1) intended to so advertise or (2) had any need of advertising. Thus plaintiff had no intent to procure a profit for his medical practice through this form of advertis-

**4**

ing. The logical extension of the argument (one which contends that any activity which brought the plaintiff's name into public view turned that activity into one for profit) would be the conversion of the activities of all professional men in their communities into ones undertaken for profit. This is clearly not the law. The fact that the activity may have had some remote possibility of economic gain does not transform it into one undertaken for the production of income or transform it into a trade or business. *Cf. Stein v. United States,* 240 F.Supp. 818 (S.D.Iowa 1964), *aff'd* 346 F.2d 569 (8th Cir. 1965). It is the plaintiff's burden to demonstrate that such advertising was a significant motive. *See, Stein, supra* at 821. In the instant action the record reflects a total lack of such proof.

■ The only other finding of the court in *DePinto* (2) that could cast possible doubt on DePinto's own affidavit would be the fact that he could have voted himself director's fees. Of course, DePinto in his affidavit denied that he ever intended to vote himself such fees. In his deposition (*Deposition of Angus DePinto, M. D.,* October 8, 1974, made part of the stipulated facts and on file herein) DePinto stated that he did not expect such fees since he viewed serving on the board of Provident to be the same as serving on the board of the Y.M.C.A. (Depo. 21) or the Phoenix Country Club board (Depo. 22). He viewed such service as being honorary and not remunerative in nature (Depo. 22). As to the fees only one possible conclusion can be drawn from these facts. DePinto did not view such service as being for profit and did not view himself as being in a trade or business by being a director.

The only other possible evidence of any profit motive is found in DePinto's deposition. DePinto seems to claim that as a member of the board he could have made future investments in the corporation. (Depo. 19). This proposition is of course denied by him in his earlier affidavit. The record before this Court supports that earlier denial. It is clear from his lack of interest in the business and the lack of compensation for participation therein that DePinto did not become a director of the corporation as a result of any profit motive.

Based upon the record submitted to this Court, only one conclusion is supported by the evidence. Augus J. DePinto was not in a trade or business by being a director of Provident or United and he did not enter upon that directorship pursuant to any motive for profit.

*Status of Bankruptcy Estate as a Taxable Entity*

DePinto's counsel has presented an unique argument for the application of 26 U.S.C. § 671 *et seq.* (Grantor Trust Taxation) to the instant factual situation. This Court's review of the case law reveals that such a contention would be a matter of first impression. Since the Court has found that the losses and related expenses claimed in the instant case were not deductible, this question need not be reached.

It is ordered:

Pursuant to Rule 58, Federal Rules of Civil Procedure, the Clerk will enter judgment that all relief requested is denied and for defendant's taxable costs incurred.